## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JAMES TRACIE, JR., ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO: 07-5754** |
| **CARL FOSTER, ET AL** | **SECTION: "S" (4)** |

## ORDER AND REASONS

_____The motion for summary judgment filed by Carl Foster, individually and in his capacity as an Amite City Police Officer and the Amite City Police Department (Doc. # 10) is GRANTED.  The motion for summary judgment on behalf of the Tangipahoa Parish School System (Doc. #11) is GRANTED.

## BACKGROUND

On September 28, 2006, at 7:30 a.m., plaintiff James Joshua Tracie, a high school student of Amite High School, was given a traffic citation for the careless operation of a vehicle inside a bus lane.  The citation was issued by defendant Carl Foster, a reserve police officer with the defendant police department and a R.O.T.C. teacher at Amite High School, which is part of defendant Tangipahoa Parish school system.  Plaintiffs have also sued Amite City.  According to plaintiffs, on November 1, 2006, Tracie was "tried and questioned" as to the citation without Officer Foster being

present and upon the testimony of an unidentified officer who indicated that he had seen the incident.[1]

On August 24, 2007, James Tracie, Jr. on behalf of his son, James Joshua Tracie, and James Joshua Tracie on his own, filed suit in the 21st Judicial District Court for the Parish of Tangipahoa, State of Louisiana, alleging violations of the 42 U.S.C. §§1981, 1983, 1985, 1986, and 1988, the First, Fourth and Fourteenth Amendments of the United States Constitution and Louisiana Civil Code article 2315 *et seq*.[2]  On September 20, 2007, defendants removed the matter based on federal question jurisdiction.

Officer Foster's sworn affidavit states that when he issued the ticket to Tracie, Foster was acting in the capacity of an officer for the Amite City Police Department; that on the day that the ticket was given, Foster was working at the Amite High School, monitoring students as they arrived for school; that Foster observed Tracie driving at a high rate of speed a 2006 Chevrolet Monte Carlo in the bus lane on school grounds; that Foster ordered Tracie to slow down and Tracie refused to do so; and that Foster issued a citation to Tracie for violating La. Rev. Stat. § 32:58, careless operation.[3]

In his deposition, Tracie's father, plaintiff James Tracie, Jr.,[4] testified that he could not say

---

[1] The results of that trial are not disclosed in this proceeding.

[2] Plaintiffs claim that prior this incident, Tracie had never received a ticket, and that now Tracie has major depression, sleep disturbance, significant loss of interest and pleasure, weight loss, fatigue, decreased ability to think, hyper-arousal, problems with his gastrointestinal system, diminished appetite and symptoms of nutritional deficiency. *See* Paragraph 8, Plaintiffs' Petition for Damages.

[3] *See* Exhibit A, Affidavit of Carl Foster, to memorandum in support of summary judgment on behalf of the School System.

[4] James Tracie, Jr. is suing on his own behalf and on behalf of his son, who is also suing on his own behalf.

whether Foster had physically touched or yelled at his son, that he did not discuss the incident with Foster, that his son denied to his father that he ever had a problem with Foster, and that he does not know why the ticket was issued.[5]

Plaintiffs' petition alleges, *inter alia*, that the citation was issued without justification, probable cause or reasonable suspicion;[6] that Foster was inadequately trained;[7] that the citation was given as part of a continuing pattern of civil rights abuses by the defendants;[8] and that the defendants deliberately implemented policies and practices which encourage civil rights violations.[9] Plaintiffs further allege that Amite School Principal, Lucille Morris advised Tracie's mother that if the matter went to trial, she would lie that she gave Officer Foster the authority to give the citation.[10] Plaintiffs claim that Foster had been monitoring Tracie "for a long period of time prior to this incident," and that because Foster was envious of Tracie's 2006 Monte Carlo automobile, Foster took advantage of his position as a teacher and officer to give Tracie a citation without justification, probable cause, and/or reasonable suspicion.[11]

---

[5]*See* Exhibit B, Deposition of James Tracie, Jr., to memorandum in support of summary judgment on behalf of Foster and Amite.

[6]*See* Paragraph 2, Plaintiffs' Petition for Damages.

[7]*See* Paragraph 10, Plaintiffs' Petition for Damages.

[8]*See* Paragraph 3, Plaintiffs' Petition for Damages.

[9]*See* Paragraph 3, Plaintiffs' Petition for Damages.

[10]*See* Paragraph 6, Plaintiffs' Petition for Damages.  There is no indication that the principal testified at the trial on the citation.

[11]*See* Paragraph 6, Plaintiffs' Petition for Damages.

**ANALYSIS**

*Summary Judgment Standard*

Summary judgment is appropriate if the pleadings, depositions, interrogatory answers and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[12]  Although the court must consider the evidence with all reasonable inferences in the light most favorable to the non-moving party, the non-movant must produce specific facts to demonstrate that a genuine issue exists for trial.[13]

The non-movant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue.[14]  The mere existence of a scintilla of evidence in support of the non-movant's position is insufficient to defeat a properly supported motion for summary judgment.[15]  Accordingly, conclusional rebuttals of the pleadings are insufficient to avoid summary judgment.[16]  Further, if the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to support its motion, but need only point out the absence of evidence supporting the non-movant's case.[17]

---

[12]Fed.R.Civ.P. (56); *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554-55 (1986).

[13]*Webb v. Cardiothoracic Surgery Associates of North Texas*, 139 F.3d 532, 536 (5th Cir.1998).

[14]*Id.*

[15]*Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512 (1986).

[16]*Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir.1993).

[17]*Celotex,* 477 U.S. at 324; *Saunders v. Michelin Tire Corp.*, 942 F.2d 299, 301 (5th Cir. 1991).

4

Once the movant produces such evidence, the burden shifts to the respondent to direct the attention of the court to evidence in the record sufficient to establish that there is a genuine issue of material fact requiring a trial.[18]  The responding party may not rest on mere allegations made in the pleadings as a means of establishing a genuine issue worthy of trial.[19]  If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for.[20]

### §1983 Claims

Section 1983 provides a remedy against "every person," who under color of state law, deprives another of any rights secured by the Constitution and laws of the United States.[21]  Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere.[22]

### a) Claims Against Police Department

Plaintiffs claim that the police department and Foster in his official capacity violated their constitutional rights through violations of §1983.  Official capacity suits are treated as suits against the government entity; thus, plaintiffs' claims against Foster in his official capacity merge with their

---

[18]*Celotex*, 477 U.S. at 324.

[19]*Anderson*, 477 U.S. at 248-49; *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994)(*en banc*).

[20]Fed. R. Civ. Proc. 56(c); *Celotex*, 477 U.S. at 322.

[21]42 U.S.C. §1983.  *Monell v. Dep't of Soc. Servs*., 436 U.S. 658 (1978).

[22]*Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 n. 3 (5th Cir. 1999).

claims against the City.[23]

Defendants have raised the issue of the Amite City Police Department's amenability to suit. Plaintiffs have failed to show that the police department "has been granted the capacity 'to sue or be sued.'"[24]  "'[U]nless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself.'"[25]  Hence, the Amite City Police Department is not a suable entity and is DISMISSED.  However, plaintiffs herein have properly Amite City as defendant.

A municipality or other local governmental units, including school boards, are "persons" under §1983, and they may be sued for constitutional torts that are caused by some official policy.[26]  However, the government's liability for constitutional torts under §1983 is different and more narrow than its liability for traditional torts as the doctrine of *respondeat superior* does not apply.[27]

"[M]unicipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or

---

[23]*Bd. of Comm'rs v. Brown*, 520 U.S. 397, 405 (1997).  *See also Reynolds v. New Orleans City*, 2008 WL 853591 (5th Cir. 2008).

[24]*See Thomas-Melton v. Dallas County Sheriff's Dept.*, 39 F.3d 320 at *2  (5th Cir. 1994) (*quoting Darby v. City of Pasadena Police Department*, 939 F.2d 311, 313 n.1 (5th Cir. 1991)).

[25]*Darby*, 939 F.2d at 313.

[26]*Monell*,  436 U.S. at 690-91.  *See also Denno v. School Board of Volusia Co. Fla.*, 218 F.3d 1267, 1276 (11th Cir. 2000), *cert den.*, 531 U.S. 958 (2000).

[27]*Monell*, 436 U.S. at 691.  "[A] city is not vicariously liable under §1983 for the constitutional torts of its agents: it is only liable when it can be fairly said that the city itself is the wrongdoer."  *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 122 (1992).

custom."[28]  A plaintiff may establish municipal liability under §1983 by establishing "[a] persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy."[29]  Isolated unconstitutional actions by government employees will almost never trigger liability.[30]

Plaintiffs do not identify a policymaker, an official policy or constitutional violation caused by an official policy.  Plaintiffs made vague and conclusional allegations as these elements.[31] Plaintiffs suggest that Foster, as an off duty reserve officer, had no authority to issue the citation, but offer no support for their allegation.  A determination of whether an officer was acting under color of law does not depend on his or her on or off duty status at the time of the alleged civil rights violation.[32]

Plaintiffs further claim that Foster was inadequately trained.  To establish a city's liability under §1983 on a theory of inadequate training, a plaintiff must show 1) that inadequate training procedures existed; 2) that inadequate training caused the officer to violate constitutional rights; and 3) the deliberate indifference of municipal policymakers.[33]  Plaintiffs provide no evidence of these

---

[28]*Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir. 2001).

[29]*Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002).

[30]*Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir. 2001).

[31]See paragraphs 3, 12, and 13 of the Petition for Damages.

[32]*Laughlin v. Olszewski,* 102 F.3d 190, 192 n.1 (5th Cir. 1996).

[33]*Pineda v. City of Houston*, 291 F.3d 325, 331 (5th Cir. 2002).

three elements.  There is no viable claim for inadequate training.

Plaintiffs claim violations under the First, Fourth, and Fourteenth Amendments of the United States Constitution, and unspecified state constitutional violations.  Plaintiffs offer no evidence or argument to support their First Amendment claim or state constitutional claims.[34]  The court is not required to raise and discuss legal issues that a party has failed to assert properly.[35]  The mere mention of a claim, without evidence is insufficient to support a claim.[36]  As a result, plaintiff's First Amendment and state constitutional claims are DISMISSED.

The only constitutional claims raised are plaintiffs' Fourth and Fourteenth Amendment claims.  The Fourth Amendment protects individuals "against unreasonable searches and seizures."[37] Traffic stops are deemed seizures for purposes of the Fourth Amendment and are analyzed under the standard articulated in *Terry v. Ohio*.[38]  The standard is a two-tiered reasonable suspicion inquiry: 1) whether the officer's action was justified at its inception, and 2) whether the search and seizure was reasonably related in scope to the circumstances that justified the stop in the first place.[39]  An officer's brief investigatory stop of a vehicle and its driver does not violate the Fourth Amendment

---

[34]*See* Paragraph 18 of the Plaintiffs' Petition for Damages wherein plaintiffs' claim various violations under unspecified "counterparts of the Louisiana Constitution."

[35]*Brinkman v. Abner*, 813 F.2d 744, 748 (5th Cir. 1987).

[36]Unsubstantiated assertions are not competent summary judgment; it is incumbent upon the non-moving party to present evidence - not just conjecture and speculation - to support each element of the claim.  *Grimes v. Texas Dept of Mental Health & Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996).

[37]U.S. Const. amend. IV.

[38]*Terry v. Ohio*, 392 U.S. 1 (1968); *U.S. v. Valadez*, 267 F3d 395, 397-98 (5th Cir. 2001).

[39]*Terry,* 392 U.S. at 19-20 (1968); *Valadez*, 267 F3d at 397-98.

provided it is based on the "reasonable suspicion" that the person is engaged or is about to be engaged in criminal activity.[40]  Such criminal activity includes traffic violations.[41]  A police officer may lawfully detain a stopped motorist for the period necessary to investigate a traffic violation.[42]

In this case, Foster's sworn affidavit states that he observed Tracie driving his car at a high rate of speed in a bus lane on school grounds where students and faculty were present; that he ordered Tracie to slow down and Tracie refused to do so; and that a citation was issued to Tracie as a result.  Defendants' iteration of undisputed facts, which plaintiffs do not controvert, states that Tracie was not physically detained or restrained by Foster and that Tracie was allowed to leave after the citation was issued.

Based on the evidence presented, Foster had reasonable suspicion that a traffic violation was occurring, and that the stop reasonably related in scope to the circumstances that justified the stop in the first place.[43]  Tracie was given a citation for careless operation, not speeding.  Further, Tracie does not deny that he had been traveling at a high rate of speed in the bus lane on the day of the incident.  Moreover, plaintiffs can prove no connexity between an official policy and a constitutional violation.  The traffic stop, therefore, was valid and not violative of the Fourth Amendment.

Plaintiffs' Fourteenth Amendment "due process" argument is a repetition of plaintiffs' Fourth Amendment argument.  The Fifth Circuit has held that "mere negligence is insufficient to establish

---

[40]*U.S. Breeland*, 53 F.3d 100, 102 (5th Cir. 1995).

[41]*Breeland*, 53 F.3d at 102.

[42]*Florida v. Royer*, 460 U.S. 491, 500 (1983).

[43]*Terry*, 392 U.S. at 19-20 (1968); *Valadez*, 267 F3d at 397-98.

an abuse of power by a state official in the context of the Fourteenth Amendment: such conduct, by itself, does not violate an individual's substantive due process rights."[44]   The Due Process Clause was intended to prevent government officials from employing governmental power as an instrument of oppression.[45]   A cognizable level of executive abuse of power for purposes of a due process violation must be one which "shocks the conscience."[46] The Due Process guarantee does not impose liability every time someone cloaked with state authority causes harm.[47]   This case does not present a "shock the conscience" violation so as to rise to the level of a due process violation.

Plaintiffs have failed to demonstrate the "requisite degree of culpability" and have failed to demonstrate "a direct causal link" between the municipal action and the alleged constitutional rights violation.[48]   Plaintiffs can prove no set of facts in support of their constitutional claims of violations which would entitle them to relief against the city.   Accordingly, the city has met its burden of establishing the absence of evidence supporting an essential element of plaintiffs' constitutional claims,[49] and plaintiffs' §1983 claims against the city and Foster in his official capacity are DISMISSED.

*b) Claims against the School System*

---

[44]*Love v. King*, 784 F.2d 708, 712 (5th Cir. 1986).

[45]*Love,* 784 F.2d at 712 and n.5.

[46]*County of Sacramento v. Lewis, 523 U.S. 833,* 118 S.Ct. 1708, 1716 (1998); *McClendon v. City of Columbia*, 305 F.3d 314, 326 and n. 8 (5th Cir. 2002).

[47]*County of Sacramento,* 118 S.Ct. at 1716.

[48]*See Bryan County v. Brown*, 520 U.S. 397, 404 (1997).

[49]*Celotex,* 477 U.S. at 324; *Saunders,* 942 F.2d at 301.

Plaintiff claim that the school system and Foster violated their constitutional rights when he issued the traffic citation to Tracie while working for the school system.

As an initial matter, there is no evidence that Foster, in his capacity as a school teacher, was "acting under color of state law" when he issued the citation to Tracie.  Foster's ability to issue a traffic citation arose solely from his capacity as a reserve officer for the city; plaintiffs provide no evidence to support otherwise.  Further, the school system supports its contention that Foster was not acting under color of state law in his capacity as a school teacher with Foster's affidavit which states that "at all times material herein in the capacity as an Amite Police Officer on September 28, 2006."[50]  Thus, plaintiffs have stated no cause of action against the school system because there is no evidence that Foster was acting under color of state law when he issued the traffic citation to Tracie.

Further, plaintiffs do not specifically identify an ordinance, regulation, or a well-settled custom or policy in violation of their constitutional rights, nor do plaintiffs identify a policy maker.[51]  Absent doing so, plaintiffs can prove no set of facts in support of their constitutional claims of violations which would entitle them to relief against the school system.  Accordingly, because plaintiffs have no evidence as to these elements of their §1983 claim, the defendant school system has met its burden of establishing the absence of evidence supporting an essential element of

[50]*See* Exhibit A, Affidavit of Carl Foster, to memorandum in support of summary judgment on behalf of the School System.

[51]While plaintiffs allege in the petition that the principal indicated to Tracie's mother that the principal would lie regarding whether Foster had authority to issue the citation, plaintiffs provide no evidence that the principal lied that Foster had her authority to issue traffic citations, or that the principal participated in the trial of the traffic citation.

plaintiffs' constitutional claims.[52]  The motion for summary judgment on the §1983 claims as to the school system is granted.

*§1981, §1985 and §1986 Claims*

Plaintiffs also claim violation of constitutional rights under §§1981, 1985 and 1986.  To establish a claim under §1981, a plaintiff must allege facts in support of the following elements: 1) the plaintiff is a member of a racial minority; 2) an intent to discriminate on the basis of race by the defendant; and 3) the discrimination concerns one or more activities enumerated in the statute.[53] Plaintiffs' petition makes no allegation as to Tracie's race, or that Foster, the city, or the school system were motivated by any racial animus.  Accordingly, there is no genuine issue of material fact, and the School System is entitled to judgment as a matter of law, dismissing plaintiffs' §1981 claims against it.

Sections 1985 and 1986 are directed at conspiracies to interfere with civil rights.[54]  Although plaintiffs do not specifically allege the section of §1985 under their claims are being brought, §1985(3) is the section which deals with depriving a person of rights or privileges.  To state a claim under §1985(3), a plaintiff "must allege that two or more persons conspired to directly, or indirectly, deprive [her] of the equal protection of the laws or equal privileges and immunities under the laws."[55]  To state a §1985(3) claim, plaintiffs must allege that the conspirators were motivated by

---

[52]*Celotex,* 477 U.S. at 324; *Saunders,* 942 F.2d at 301.

[53]*Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir. 1994).

[54]*Bryan v. City of Madison, Miss.*, 213 F.3d 267, 276 (5th Cir. 2000).

[55]*Newsome v. EEOC*, 301 F.3d 227, 232 (5th Cir. 2002).

12

Tracie's race.[56]  "A valid §1985 claim is a prerequisite to a §1986 claim."[57]

Because Plaintiffs' petition makes no allegation as to Tracie's race, or that the city, Foster or the school system were motivated by any racial animus, plaintiffs' §1985 and §1986 claims fail, and are DISMISSED as a matter of law.[58]

<em>Foster, in his Individual Capacity</em>

Plaintiffs are also suing Foster in his individual capacity.  Personal capacity suits which seek to impose individual liability upon a government officer for actions taken under color of state law are recognized under §1983.[59]  A state official can be sued in his individual capacity and held personally liable under §1983 if it can be shown that the official, acting under state law, caused the deprivation of a federal right.[60]  However, such persons are entitled to assert the defense of qualified immunity.  Because it has been determined that no constitutional violations occurred, it is unnecessary to determine whether Foster is entitled to the defense of qualified immunity.

---

[56]*Newsome,* 301 F.3d at 232.

[57]*Bryan,* 213 F.3d at 276.

[58]The court also notes that while plaintiff allege that the principal advised Tracie's mother that the principal would have lied and said that Foster had the authority to issue the citation, there is no indication that she did so, or was present at the trial on the ticket.

[59]*Hafer v. Melo*, 502 U.S. 21, 25 (1991).

[60]*Hafer*, 502 U.S. at 25-31.

13

*State Law Claims*

Plaintiffs' state law claim that Foster negligently issued the traffic citation is without merit.

The doctrine of *respondeat superior* holds employers responsible for the actions of its employees.  Under Louisiana law, an employer is answerable for the damage occasioned by its servants in the exercise of the functions in which the servant is employed.[61]  Specifically, an employer is liable for its employee's torts committed if, at the time, the employee was acting within the course and scope of his employment.[62]  An employee is acting within the course and scope of his employment when the employee's action is "of the kind that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer."[63]

While Foster was employed with the Amite High School at the time the citation was issued, Foster issued the citation in his capacity as a reserve officer for the Amite City Police Department, and not in his capacity as an employee of the school system.  The only authority by which Foster could issue the citation was due to his status as a reserve officer, and not as a ROTC teacher.  Because there is no evidence that Foster's issuance of the citation was in the course and scope of employment as a school teacher for the school system, any claim by plaintiffs that the school system is responsible for the actions of Foster under a *respondeat superior* theory of liability are without merit as a matter of law, and plaintiffs' state claims are dismissed as a matter of law.

---

[61]La. Civ. Code art. 2320.

[62]*Timmons v. Silman*, 761 So.2d 507, 510 (La. 2000).

[63]*Timmons,* 761 So.2d at 510.

14

Though Foster issued the citation in the course and scope of his employment as a reserve officer with the city, the court was not presented with evidence to support that Foster's issuance of the citation was negligent or was violative of any state laws.

Accordingly, the motions for summary judgment filed on behalf of Carl Foster, individually and in his capacity as an Amite City Police Officer, Amite City and the Tangipahoa Parish School System are hereby GRANTED, dismissing all plaintiffs' claims against them with prejudice.

New Orleans, Louisiana, this   23rd  day of April, 2008.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**